In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3439

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERRY K. PARTEE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 00 CR 50049—**Philip G. Reinhard**, *Judge.*

ARGUED APRIL 2, 2002—DECIDED AUGUST 21, 2002

Before POSNER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant Jerry K. Partee pleaded guilty to conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and was sentenced to 408 months of imprisonment. He appeals, arguing that his sentence was unconstitutional, that the district court erred in calculating the "relevant conduct" of his offense, that the district court erred by imposing a sentencing enhancement for "obstruction of justice," and that the district court erred by failing to reduce his sentence for "acceptance of responsibility." We affirm.

## I. History

After Partee pleaded guilty, the government introduced evidence of relevant conduct pursuant to United States Sentencing Guideline § 1B1.3 at Partee's sentencing hearing. This evidence included testimony from four of Partee's former drug associates and related to Partee's drug activities from November 1997 until October 2000. For example, Andre Malone stated that between November 1997 and April 1998, he purchased 2.25 to 4.50 ounces of crack every two or three weeks from Partee. Malone further stated that between April 1998 and September 1998, he purchased 0.25 to 0.50 kilograms of crack per week from Partee.

Next, William Simpson testified that he met Partee in the summer of 1998 and shortly thereafter began processing powder cocaine into crack for him. Simpson testified that over a seven-month period, he processed approximately 0.25 to 0.50 kilograms of crack per week for Partee. Ellsworth Dismuke then testified that on three occasions in 1999, he helped Partee acquire one kilogram of crack from Dismuke's friend, Kenji Pace. Dismuke also stated that he personally sold Partee 0.25 kilograms of crack in 1999 and that he witnessed Simpson processing powder cocaine into crack for Partee on several occasions. Finally, Perry Woodard testified that between August 2000 and October 2000, he sold approximately $600 to $2000 worth of crack for Partee every day. Further, Woodard stated that he observed Partee processing powder cocaine into crack on several occasions and that Partee obtained his cocaine from a person named "KP."

Prior to Partee's sentencing hearing, Partee indicated to the probation officer completing his Pre-Sentence Report ("PSR") that he had been legally employed at Flemons' Express during 1997 and 1998. At the sentencing hearing, however, the government introduced testimony from Robert Flemons, the owner of Flemons' Express, who stated that

Partee had never worked for him. Further, Flemons testified that he fabricated pay stubs on Partee's behalf because Partee told him that he needed to show the probation officer that he had a job. Finally, the government introduced IRS records indicating that Partee had not filed federal income tax returns between 1997 and 1999.

The district court initially calculated Partee's offense level to be 38, finding that the government's relevant conduct evidence proved "1.5 KG or more of Cocaine Base." Next, the district court found that Flemons' testimony was truthful and therefore enhanced Partee's sentence by two levels for obstruction of justice pursuant to United States Sentencing Guideline § 3C1.1. Finally, the district court enhanced Partee's sentence by two levels, finding that Partee was a "leader in criminal activity."[1] Thus, the district court calculated Partee's offense level to be 42, and sentenced him to 408 months of imprisonment.

## II. Analysis

### A. *Apprendi*

Partee's first argument on appeal is that the district court's relevant conduct findings violated the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). However, *Apprendi* only applies to sentences beyond the prescribed statutory maximum. *See United States v. Jones*, 245 F.3d 645, 651 (7th Cir. 2001); *Talbot v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000). In this case, Partee was convicted of conspiracy to distribute "50 grams or more" or crack, an offense that has a statutory maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A). However, Partee was sentenced to 408

---

[1] Partee does not challenge this sentencing enhancement on appeal.

months of imprisonment, a sentence less than this statutory maximum. Thus, because Partee's sentence did not exceed the statutory maximum, the district court's relevant conduct findings did not violate *Apprendi*. *See Talbot*, 226 F.3d at 869 ("[W]hen the statutory maximum is life imprisonment, *Apprendi* is beside the point.").

## B. Relevant Conduct

Next, Partee contends the district court erred in finding that 1.5 kilograms or more of crack were attributable to him. We review a district court's calculation of the quantity of drugs attributable to a defendant as relevant conduct for clear error. *See United States v. Spiller*, 261 F.3d 683, 691 (7th Cir. 2001). Special deference is given to findings based upon credibility determinations, "which can virtually never be clear error." *United States v. Smith*, 280 F.3d 807, 810 (7th Cir. 2002) (quotations omitted).

As an initial matter, we note that the district court's relevant conduct findings had no impact on Partee's sentencing range, a fact which Partee's counsel conceded at the sentencing hearing. This is so because as a "career offender," Partee faced a minimum offense level of 37 under Sentencing Guideline § 4B1.1, and the district court's finding of relevant conduct exceeding 1.5 kilograms of crack yielded an offense level of 38. With a criminal history category of VI, Partee's sentencing range at those two offense levels was identical—360 months of imprisonment to life imprisonment.

Turning to the merits of Partee's claim, in calculating the amount of drugs as relevant conduct, the district court may consider a wide variety of information as long as that information bears "sufficient indicia of reliability to support its probable accuracy." *Spiller*, 261 F.3d at 691. In *Spiller*, we held that the testimony of four witnesses who stated that they had purchased a certain amount of crack per week

from the defendant had sufficient indicia of reliability to support the district court's relevant conduct findings. *See id.* Further, in *United States v. Morrison*, 207 F.3d 962, 966-69 (7th Cir. 2000), we upheld a 14-level increase in offense level based on the PSR, which contained statements from three of the defendant's former drug associates, even though the district court was unable to assess these witnesses' credibility based on first-hand observations. In doing so, we noted that "corroboration of other witnesses, even if the corroborating witnesses are of unproven credibility, may imbue their statements with sufficient indicia of reliability." *Id.* at 968. Thus, because the statements in the PSR were internally consistent and were corroborated by other information contained in the PSR, we held that the statements bore sufficient indicia of reliability. *See id.* at 968-69.

In this case, whether viewed collectively or individually, the testimony of Partee's four drug associates established Partee's possession and distribution of many multiples of the 1.5 kilograms necessary to obtain an offense level of 38. For example, Malone testified that in a portion of his dealings with Partee, he bought 0.25 to 0.50 kilograms of crack per week from Partee for five months, which in total would equal at least five kilograms of crack. Simpson explained that he processed about 0.25 to 0.50 kilograms of crack per week for Partee for seven months, totaling at least seven kilograms of crack. Based on first-hand observation, the district court found all four witnesses' testimony to be internally consistent and credible. *See United States v. Berthiaume*, 233 F.3d 1000, 1002 (7th Cir. 2000) ("[T]he trial court is entitled to credit testimony that is totally uncorroborated and comes from an admitted liar, convicted felon, or a large scale drug-dealing, paid government informant."). Nevertheless, much of the witnesses' testimony in this case *was* corroborated. For example, Simpson testified that he processed powder cocaine into crack for Partee, and Dismuke

corroborated this testimony when he stated that he observed Simpson doing so on several occasions. Similarly, Dismuke testified that Kenji Pace sold cocaine to Partee, and this was corroborated by Woodard, who explained that "KP" supplied Partee with cocaine. Therefore, as in *Spiller* and *Morrison*, the district court did not err in making its relevant conduct findings.

## C. *"Obstruction of Justice" Enhancement*

Partee's next argument is that the district court erred in enhancing his sentence pursuant to Sentencing Guideline § 3C1.1, which provides that "[i]f the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense . . . increase by 2 levels." We give due deference to the district court's application of the Sentencing Guidelines and review its findings of fact for clear error. *See United States v. Thomas*, 11 F.3d 1392, 1399 (7th Cir. 1993).

The commentary to § 3C1.1 provides examples of the type of conduct covered by the Guideline, including "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." *Id.* cmt. n.4(h); *see also Thomas*, 11 F.3d at 1400. Further, the defendant's conduct must be willful and material for the Guideline to apply. *See id.* In *Thomas*, we held that § 3C1.1 applied where the defendant provided false information concerning his date of birth, date of high school graduation, and his discharge from the military to the probation officer during his presentence investigation. *See id.* We affirmed the district court's finding that the defendant willfully obstructed justice, noting that nothing in the record supported the defendant's assertion that his false statements were made by mistake. *See id.* Further, we held that his false statements were material because they "thwarted the pro-

bation officer from investigating the defendant's personal and criminal history, which are major factors in determining a defendant's sentence." *Id.* at 1400-01.

In this case, the district court applied § 3C1.1 because of Partee's false statement to the probation officer that he had worked at Flemons' Express. In doing so, the district court found that Partee willfully obstructed justice, crediting the testimony of Flemons, who stated that Partee had not worked there and that Flemons had fabricated pay stubs on Partee's behalf because Partee told him that he needed to show his probation officer that he had a job. In light of the fact that Partee's lie to the probation officer was part of a continuing scheme to hide his true source of income, the district court did not clearly err in finding that Partee willfully obstructed justice. The district court also did not clearly err in finding that Partee's false statements were material, as they concerned his personal history—a major factor in the sentencing determination. *See Thomas*, 11 F.3d at 1400-01. Thus, as in *Thomas*, the district court correctly applied § 3C1.1.

### D. "Acceptance of Responsibility" Reduction

Partee's final argument on appeal is that the district court erred in failing to reduce his sentence for acceptance of responsibility pursuant to Sentencing Guideline § 3E1.1, which permits such an adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense . . . ." Partee carries the burden of showing entitlement to this reduction, and we review the district court's decision not to apply § 3E1.1 for clear error. *See United States v. Gage*, 183 F.3d 711, 717 (7th Cir. 1999). As we have stated, when, as here, "a sentencing court properly enhances a defendant's offense level under § 3C1.1 for obstructing justice, he is presumed not to have accepted responsibility." *United States v. Ewing*, 129 F.3d 430, 435 (7th

Cir. 1997) (citation omitted). Further, Partee relies solely on his timely guilty plea to establish that he is entitled to a reduction pursuant to § 3E1.1, and we have previously held that merely pleading guilty is not enough for the defendant to receive a reduction for acceptance of responsibility, especially in the face of false statements by the defendant. *See Gage*, 183 F.3d at 717. Thus, the district court correctly declined to reduce Partee's sentence under § 3E1.1.

### III. Conclusion

For the foregoing reasons, we AFFIRM Partee's sentence.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*