UNITED STATES of America, Plaintiff–Appellee,

v.

Elbert COLEMAN, Defendant–Appellant.

No. 01–4019.

United States Court of Appeals, Seventh Circuit.

Submitted April 1, 2003.

Decided April 4, 2003.

Before FAIRCHILD, BAUER, and KANNE, Circuit Judges.

### ORDER

Elbert Coleman pleaded guilty to conspiracy and counterfeiting in connection with a scheme to fabricate and negotiate worthless checks, *see* 18 U.S.C. §§ 371, 513(a), and was sentenced to a total of 76 months' imprisonment. Coleman appeals, but his counsel moves to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to discern a nonfrivolous argument for appeal. Our review is limited to the potential issues discussed in counsel's *Anders* brief and in Coleman's response filed pursuant to Circuit Rule 51(b). *See United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997) (per curiam). For the reasons set forth below, we grant counsel's motion to withdraw and dismiss this appeal.

The facts as summarized in Coleman's presentence report are as follows. As early as 1998, before the start of the charged conspiracy, Coleman was acquiring blank checks and completing them with fictitious information before depositing them at his

bank or using others to negotiate them. In 2000 Coleman shifted to replicating legitimate checks on his computer and sharing the proceeds with co-conspirators who would deposit the counterfeits at their own banks and withdraw the funds before the fraud was discovered. Coleman personally negotiated two counterfeit checks by depositing them in his own bank accounts, and numerous individuals told authorities that Coleman gave them counterfeit checks to cash.

Counsel first considers whether Coleman could argue that the district court failed to comply with Federal Rule of Criminal Procedure 11(c) during his change-of-plea colloquy. Counsel identifies several purported omissions by the district court during the colloquy, but concludes that any challenge would be frivolous because the court substantially complied with Rule 11's requirements. Because Coleman did not move in the district court to withdraw his guilty pleas, we would review the plea colloquy only for plain error. *See United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002).

■ Counsel erroneously suggests that the district court failed to admonish Coleman of his rights to persist with his not-guilty pleas and to have the assistance of counsel at every stage of the proceedings, *see* Fed.R.Crim.P. 11(c)(2), (3), and also failed to query Coleman whether his willingness to plead guilty resulted from prior discussions with the government, *see id.* 11(d). Our review of the transcript of the plea colloquy shows the potential argument to be frivolous because the district court adequately covered all of these areas. The court told Coleman that he had "an absolute right to plead not guilty to these charges" and "the right to be assisted by an attorney, the right to counsel" during the proceedings. And the court

discussed with Coleman his written plea agreement "to make sure that it reflect[ed] everything that [had] been offered to encourage [him] to plead guilty." After the court went over the agreement with him line-by-line, Coleman agreed that it contained "everything [he] had been promised" in exchange for his guilty pleas and that nobody had suggested "anything else that [he] might get as a benefit for pleading guilty."

■ With respect to Rule 11, counsel also questions whether Coleman could assert that the district court failed to adequately explain the charges, especially the concept of a conspiracy. Again we conclude that such a contention would be frivolous because the court explicitly explained to Coleman the idea of a conspiracy. After outlining the statutory elements of a counterfeiting conspiracy, the court asked Coleman if he "disagree[d] that there was this conspiracy or understanding" among him and the other individuals. Asked by Coleman to elaborate, the court explained:

> The indictment alleges there was a conspiracy, which is sometimes referred to as an agreement or an understanding among various individuals to accomplish, or attempt to accomplish some criminal goal. And it's described in the indictment about this check, this organization, this group of people that made phony checks and attempted to pass them.

In response to questioning from his attorney, Coleman then admitted he was party to an agreement to make and deposit counterfeit checks and split the proceeds. Coleman's admission demonstrates that the district court adequately described the concept of conspiracy in layman's terms. *See United States v. Stotts*, 323 F.3d 520, 522 n. 1 (7th Cir.2003); *United States v. Sanchez*, 251 F.3d 598, 601 (7th Cir.), *cert. denied*, 534 U.S. 933, 122 S.Ct. 300, 151 L.Ed.2d 223 (2001).

■ One potential issue regarding the Rule 11 colloquy not mentioned by counsel is whether Coleman could challenge his guilty pleas because the district court did not advise him that any false answers he gave during the change-of-plea hearing could subject him to prosecution for perjury. *See* Fed.R.Crim.P. 11(c)(5). But this argument would be frivolous because there is no suggestion that Coleman is the subject of a current or prospective prosecution for perjury resulting from his testimony at the change-of-plea hearing. *United States v. Graves,* 98 F.3d 258, 259 (7th Cir.1996). Although the district court did specifically refer Coleman's testimony from the sentencing hearing to the federal and state authorities for consideration of prosecution for perjury, that would not affect the validity of his guilty plea.

■ Counsel also examines whether Coleman could challenge his guilty pleas on the basis that his plea agreement incorrectly stated in one paragraph that he was pleading guilty to Counts I, V, and IX when in reality he pleaded guilty only to counts I and V. But Coleman can demonstrate no prejudice from this error because the judgment of conviction correctly states the he pleaded guilty to counts I and V, only, and he received no punishment stemming from Count IX.

■ Counsel next questions whether Coleman could assert that alleged defects in the indictment render his guilty pleas void. Counsel correctly recognizes that this potential argument is also frivolous because defects in an indictment do not deprive a district court of jurisdiction over the case, *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002), and Coleman waived any non-jurisdictional challenges to the indictment by failing to present them in the district court, *United States v. Elizalde–Adame,* 262 F.3d 637, 639 (7th Cir.2001).

■ Coleman's Circuit Rule 51(b) response also identifies a concern about his guilty pleas. Coleman asserts that the prosecution coerced him to plead guilty and violated his right to procedural due process by threatening to prosecute him or his mother in a separate matter unless he agreed to plead guilty in this case. *See, e.g., Politte v. United States,* 852 F.2d 924, 929–30 (7th Cir.1988) (noting dangers posed when there are third-party beneficiaries to plea agreements). Coleman alleges that the government had no probable cause to charge his mother with any crime and that its threat to prosecute her was thus improper. But Coleman's assertion that the government had no probable cause to charge his mother with any crime relies on a criminal complaint and supporting affidavit from a different criminal matter that Coleman attached to his Circuit Rule 51(b) response in this case. These materials were never part of the district court record, however, so we could not consider Coleman's arguments on direct appeal. *See Galbraith v. United States,* 313 F.3d 1001, 1007–08 (7th Cir.2002). If Coleman wishes to pursue his assertions of improper governmental conduct, he must do so in a collateral proceeding under 28 U.S.C. § 2255. *See id.* (on direct appeal, appellate court is limited to considering evidence in the trial record and cannot consider extrinsic evidence); *United States v. Bell,* 966 F.2d 914, 918 (5th Cir.1992) (challenge to guilty plea relying on evidence outside the trial court record not proper on direct appeal). We note, however, that this claim would likely be without merit because Coleman affirmed at his change-of-plea hearing that he had not been coerced to plead guilty, a statement which would be presumed true. *See United States v. Malave,* 22 F.3d 145, 148 (7th Cir.1994).

■ Counsel also identifies a number of potential challenges to Coleman's sentence but concludes that all would be frivolous. He first questions whether Coleman could challenge the admission at sentencing of a document that allegedly was seized illegally, but correctly recognizes that the argument would be frivolous because we have held that the exclusionary rule does not apply in sentencing proceedings. *United States v. Brimah,* 214 F.3d 854, 858–59 (7th Cir.2000). Counsel further examines whether Coleman could argue that several witnesses who testified at sentencing were unbelievable and that the court should have credited his testimony instead. But this contention would be frivolous because we would defer to the district court's credibility determinations. *United States v. Willis,* 300 F.3d 803, 806 (7th Cir.2002).

■ Counsel also questions whether Coleman could challenge the district court's calculation of his sentence under the United States Sentencing Guidelines. He first examines whether Coleman could challenge the district court's determination of the amount of loss caused by the conspiracy. The court determined that the intended loss was over $500,000 and accordingly increased Coleman's offense level by 10 points pursuant to U.S.S.G. § 2F1.1(b)(1)(K).[1] Information contained in Coleman's presentence report established that the total amount of checks produced by the conspiracy was approximately $524,000, but Coleman testified at sentencing that he was involved with only two checks and should not be responsible for the entire amount of intended loss. However, the district court chose not to believe Coleman's testimony and accepted the other information provided by witnesses and the presentence report. Be-

cause the court accepted one plausible version of the facts over another, we could not find any clear error in the court's loss determination or in its application of § 2F1.1(b)(1)(K), *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), and this potential argument would also be frivolous.

■ Counsel next considers whether the district court erred by applying a two-level adjustment under § 2F1.1(b)(2) because the offense involved "more than minimal planning" or "a scheme to defraud more than one victim." Coleman forfeited this objection by not raising it in the district court, so we would only review the court's determination for plain error. *United States v. Williams,* 258 F.3d 669, 672 (7th Cir.), *cert. denied,* 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 314 (2001). We could find no error here, plain or otherwise, because Coleman admitted at sentencing that he attempted to deposit phony checks at two different banks. He thus admitted that he had intent to defraud more than one victim, and any challenge would be frivolous.

■ Counsel also examines whether Coleman could argue that the district court erred in determining that he was an organizer or leader of the conspiracy and that his offense level should be increased by four points under U.S.S.G. § 3B1.1(a). Both evidence contained in the presentence report and elicited by the government at Coleman's sentencing hearing supports the district court's determination that he was an organizer or leader. For example, several witnesses testified at the sentencing hearing that they received numerous checks from Coleman, and the presentence report recounts that Coleman

---

1. Although U.S.S.G. § 2F1.1 was repealed effective November 1, 2001, Coleman's sentencing hearing was completed on October 26, 2001.

created many of the fake checks and recruited numerous individuals to cash them. This evidence showed that Coleman was one of the masterminds of the conspiracy, and an adjustment under § 3B1.1 was appropriate. *See United States v. Frost,* 281 F.3d 654, 658 (7th Cir.2002). Although Coleman testified at sentencing that he was only involved with two false checks and was not involved in planning the conspiracy, the district court chose to credit evidence to the contrary. We could not find clear error on the district court's part, *see Anderson,* 470 U.S. at 574, and agree that this assertion would be frivolous.

■ Counsel next examines whether Coleman could challenge the district court's determination that he was not entitled to a two-point reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. As counsel correctly notes, this argument would also be frivolous. A two-point reduction under § 3E1.1. is appropriate only if the defendant "clearly demonstrates acceptance of responsibility for his offense," but there is a presumption that a defendant whose offense level was increased under U.S.S.G. § 3C1.1 for obstruction of justice did not accept responsibility. *United States v. Partee,* 301 F.3d 576, 580–81 (7th Cir. 2002). Here, the district court not only increased Coleman's offense level pursuant to § 3C1.1 for obstructing justice, but also upwardly departed from the guideline imprisonment range because Coleman engaged in extraordinary obstruction. Coleman would rely on the fact that he pleaded guilty before trial in urging that the court should have found that he accepted responsibility for his actions, but simply pleading guilty is not enough when a defendant makes repeated false statements to the court. *Partee,* 301 F.3d at 581. In light of the district court's findings that Coleman repeatedly lied throughout the sentencing hearing, we could not say that it clearly erred by denying him a two-point reduction for acceptance of responsibility.

■ Counsel also questions whether Coleman could argue that the district court erred at sentencing when it departed upward the equivalent of two offense levels from the applicable guideline range in determining his sentence. The court did so because it found that Coleman had repeatedly perjured himself, produced an altered record during the proceedings, and provided false information to the court "time and again." The court characterized Coleman's conduct as "clearly outside the guidelines and not adequately taken into consideration under the guidelines," and further noted that stopping with a two-level increase under § 3C1.1 would be "grossly inadequate." We would review the district court's decision to depart upward only for an abuse of discretion, *Koon v. United States,* 518 U.S. 81, 91, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and we agree with counsel that any challenge to the court's determination would be frivolous. We have previously held that a defendant's extraordinary obstruction of justice is a permissible ground for an upward departure, even though obstruction of justice is taken into consideration by the guidelines, *United States v. Furkin,* 119 F.3d 1276, 1283 (7th Cir.1997); *see also United States v. King,* 150 F.3d 644, 650 (1998) (case may be outside the heartland if a factor considered under the guidelines is present "in an exceptional way."). Here, the court reasoned that Coleman had, throughout the sentencing proceedings, given perjurous testimony, and that the extent of his perjury was "unusual, both in type and degree." Given the extent to which Coleman lied during the proceedings, we could not find that the district court abused its discretion by departing upward. *Id.*

Counsel last considers whether Coleman could argue that his trial counsel provided ineffective assistance. He correctly notes that no evidence in the record supports such a claim, and that Coleman must raise the issue, if at all, in a collateral proceeding. *Galbraith,* 313 F.3d at 1007.

Accordingly, for the foregoing reasons, counsel's motion to withdraw is GRANTED, and Coleman's appeal is DISMISSED.