**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Terrence WASHINGTON, Defendant–Appellant.**

**No. 03–1541.**

United States Court of Appeals,
Seventh Circuit.

Submitted July 9, 2003.

Decided July 30, 2003.

Before BAUER, COFFEY, and MANION, Circuit Judges.

## ORDER

Terrence Washington pleaded guilty to possession of 500 or more grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). At sentencing the court imposed a term of 420 months' imprisonment and five years' supervised release. Washington appeals, arguing that the court erred in its calculation of drug quantity and its decision not to lower his offense level for acceptance of responsibility.

### Background

In May 2002, Terrence Washington and Albert Brewer were arrested after police saw them throw out of a car window a bag containing 989.5 grams of powder cocaine. When confronted by police, Brewer admitted that he and Washington had acquired the cocaine and intended to sell it. After being charged in an indictment with one count of possession of 500 or more grams of cocaine with intent to distribute, Washington entered an unconditional guilty plea.

In preparing its recommendation for sentencing, the probation office interviewed several of Washington's associates with whom he had dealt drugs in the past. Based upon these witness interviews, the probation office concluded that Washing-

ton's earlier, uncharged drug dealing between 1995 and 2002 involved substantially in excess of 1.5 kilograms of crack cocaine and more than 30 kilograms of powder cocaine. For sentencing purposes, this amount converted to a marijuana equivalent of 85,284 kilograms, twice the minimum amount necessary to yield an offense level of 38, which the probation office recommended.

At sentencing the district court took testimony from some of the witnesses whose statements supported the probation office's drug quantity calculation. Among these witnesses were Brewer and two associates of Washington who were defendants in separate, pending cases (Brian Cole and Duramis Lovelace). These witnesses described Washington's participation in cocaine distribution that stretched from early 2000 until his arrest in May 2002. Cole testified that between 2000 and May 2001, he and Washington traveled between Chicago and Decatur twice a month, distributing one-half to three kilograms of cocaine on each trip (producing about seven ounces of crack cocaine from each kilogram). Lovelace testified that between May and October 2001, he and Washington made similar weekly trips between Chicago and Decatur, purchasing and distributing at least one kilogram of cocaine each time (producing about 4.5 ounces of crack from each kilogram). Brewer testified that between March and May 2002, he made seven or eight trips with Washington between Chicago and Decatur, acquiring at least one kilogram of cocaine on each trip. Like the other witnesses, Brewer stated that he knew that Washington produced crack with some of the cocaine that they obtained in Chicago. Both Brewer and Lovelace testified that on one occasion, Washington cut his hand while producing crack cocaine and had to be taken to the hospital.

The testimony of these witnesses was corroborated by Trevor Stalets, a Decatur police officer who assisted in the preparation of the PSR. According to Stalets, his investigation revealed that in October 2001 and February 2002, an informant purchased crack cocaine from Lovelace, who later identified Washington as the source of the drugs. Further, Stalets testified that in October 2001, Washington, Lovelace and Brewer arrived at the residence of Brewer's girlfriend where police found items used to prepare crack cocaine, as well as cocaine residue while executing a search warrant. Finally, Stalets provided details of cell phone records and motel receipts corroborating the claims of the witnesses whose testimony supported the probation office's drug quantity calculation. Stalets testified that between June 2000 and January 2001, Washington and Cole called each other 684 times. Between November 2000 and November 2001, Washington rented a motel room near Chicago 10 times, and between April 2000 and April 2001, Cole rented a motel room in Decatur 16 times.

Washington also testified at his sentencing hearing, and although he admitted that he purchased cocaine in Chicago and sold it in Decatur, he denied the specific allegations in the PSR. Specifically, Washington contended that the amount of drugs he distributed was far smaller than that alleged by the government and that he never sold any crack cocaine. Despite the fact that Washington denied the accuracy of the drug quantity calculation, he was unable to provide an alternative estimate of the amount of drugs that he had sold between 1995 and 2000.

The district court did not find Washington's testimony to be credible. Specifically, the court stated:

The Court does not find Terrence Washington to have been a credible witness

based on the inconsistencies in his testimony, based on the manner and demeanor of his testimony, and looking at his testimony in light of all of the other witnesses.

Instead, the court credited the testimony of Lovelace, Coles, and Officer Stalets, and accepted the government's conclusions in the PSR as to the drug quantity calculations. As a result, the court determined that the evidence clearly established Washington's participation in the purchase and distribution of well over a marijuana equivalent of 30,000 kilograms–the minimum necessary for an offense level of 38.

Further, the court decided that because he provided false testimony and failed to show remorse for his crime, Washington was not entitled to a reduction in his offense level for acceptance of responsibility under Guideline § 3E1.1. Indeed, the court found that Washington's false testimony at sentencing constituted obstruction of justice, which precluded a reduction in his offense level. Moreover, the court held that Washington's testimony showed "no sincere remorse or contrition at all about a life of crime that spans longer than the presentence report."

Having established these facts by a preponderance of the evidence, the district court found that Washington's offense level was 38, and his criminal history category was VI. The sentencing guidelines provide for a range of 360 months to life imprisonment, although the statutory maximum for Washington's crime was 480 months' imprisonment. Accordingly, Washington received a sentence of 420 months' imprisonment, five years of supervised release, and a $100 special assessment.

## Discussion

### I. Calculation of Drug Quantity.

On appeal Washington contends that the district court erred by including as part of his relevant conduct drug dealing that was not part of a single course of conduct or common scheme. He argues that the record supports no connection between the possession of cocaine charge for which he was convicted and the long string of other uncharged cocaine offenses which where taken into consideration at sentencing. In calculating drug quantity, a sentencing court must consider drugs "that were part of the same course of conduct or common scheme or plan as the convicted offenses," *United States v.. Sumner*, 325 F.3d 884, 889 (7th Cir.2003). "Two or more offenses are part of a common scheme or plan if they are connected by at least one common factor, such as 'common victims, common accomplices, common purpose, or similar modus operandi." *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir.1998); *see also United States v. Spry*, 190 F.3d 829, 836 (7th Cir.1999) (examining "similarity, regularity, and temporal proximity of the incidents in question."). It is the government's burden to establish this relationship between the offense of conviction and relevant conduct, *United States v. Ojomo*, 332 F.3d 485 (7th Cir.2003), and we uphold the district court's findings unless they are clearly erroneous, *United States v. D'Ambrosia*, 313 F.3d 987, 991 (7th Cir.2002).

First, Washington attacks the government's use of other, uncharged drug conduct at sentencing by pointing out the lack of connection between the offense of conviction and the individuals with whom he dealt drugs in the past. But Washington's argument is irrelevant; he was connected to each of his drug associates, regardless of whether they the associates knew each other. Each of the witnesses who testified at sentencing and in the PSR described individual trips with Washington to and from Chicago to purchase cocaine. The district court concluded that each time Washington lost a source or a buyer, he

acquired a new one and his drug business continued. But a "course of conduct" includes any offenses connected by at least one common factor, *see United States v. Zehm,* 217 F.3d 506, 512 (7th Cir.2000), and all of the relevant drug conduct alleged at sentencing involved Washington's trips to Chicago to purchase cocaine for distribution in Decatur. The district court properly concluded that the factors common to all of Washington's drug dealing between 1995 and 2001–the type of drug, its source, and the location in which it was distributed–permitted the court to consider the uncharged conduct at sentencing.

Second, Washington also asserts on appeal that, contrary to the district court's findings, the government's witnesses at sentencing were not credible, and therefore the court erred by concluding that the total quantity of drugs was proven by a preponderance of the evidence. *See United States v. Smith,* 308 F.3d 726, 745 (7th Cir.2002). Washington specifically contends that the district court erred in crediting the testimony of Cole, Lovelace, and Brewer–individuals who were incarcerated and therefore had a motive to lie. A defendant has a due process right to be sentenced on the basis of reliable information, and the district court is required to make a significant inquiry to ensure the accuracy of the evidence, *United States v. Galbraith,* 200 F.3d 1006, 1012 (7th Cir. 2000), but we are reluctant to reverse a district court's credibility determinations, *see Sumner,* 325 F.3d at 890.

■ The record provides no clear reason to support Washington's argument that the sentencing witnesses lacked credibility. Indeed, Cole's testimony was corroborated by cell phone logs and motel reservation records that Officer Trevor Stalets introduced on behalf of the government at sentencing. Those logs showed that during the time period in which Cole and Washington dealt drugs, they placed hundreds of cell phone calls to each other, and rented motel rooms in Chicago and Decatur on numerous occasions. Moreover, "[t]he trial court is entitled to credit testimony that is totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant." *United States v. Partee,* 301 F.3d 576, 579 (7th Cir.2002). Thus, the district court's credibility determinations were not clearly erroneous.

■ Finally, Washington argues that the district court inappropriately considered eight witness interviews described in the PSR, despite the fact that the witnesses were not presented for cross-examination at sentencing. In Washington's appellate brief, however, he does not specifically state which witnesses he would have liked to cross-examine. Moreover, at sentencing Washington made no objection to the consideration of these uncalled witnesses' testimony; therefore, he forfeited this challenge to his sentence, precluding appellate review. *See United States v. Scanga,* 225 F.3d 780, 783 (7th Cir.2000). In any event, Washington's counsel cross-examined Cole, Lovelace, Brewer, and Stalets in great detail before the court concluded the sentencing hearing. Even if the remaining eight witnesses' testimony was hearsay, such testimony is admissible at sentencing hearings. *See* Fed.R.Evid. 1101(d)(3); 18 U.S.C. § 3661; *Todd v. Schomig,* 283 F.3d 842, 853 (7th Cir.2002). Accordingly, the district court did not err by taking such evidence into consideration at sentencing.

II. Reduction in Offense Level for Acceptance of Responsibility.

■ Washington also argues on appeal that the district court should have granted him a three-level reduction in his offense level for acceptance of responsibility because he pleaded guilty to the crime of

which he was charged. Guideline § 3E1.1 allows for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility," and an additional level if he assisted in the investigation or prosecution of his own misconduct. U.S.S.G. § 3E1.1. But a guilty plea alone does not entitle Washington to a reduction in offense level under Guideline § 3E1.1; he must also show that he has "accepted responsibility for his conduct in a moral sense." *United States v. Bosque*, 312 F.3d 313, 316 (7th Cir.2002). Washington cites to the guidelines commentary to support his argument that because he pleaded guilty, he may obtain the two-level reduction without volunteering or admitting to relevant conduct. *See* U.S.S.G. § 3E1.1(a), comment. (n.1(a)). While a defendant may remain silent without jeopardizing his reduction in offense level, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* Because the determination of a defendant's acceptance of his responsibility is case-specific and better suited to a trial court's evaluation, we review a district court's findings of fact for clear error. *See United States v. Partee*, 301 F.3d 576, 580 (7th Cir.2002).

The district court offered two proper grounds for denying Washington the reduction in his offense level. First, the court held that Washington's testimony at sentencing failed to show any evidence of remorse or contrition. Specifically, the court stated that Washington showed "no sincere remorse or contrition at all about a life of crime that spans longer than the presentence report." Washington does not directly dispute the sentencing judge's conclusions as to his lack of remorse and contrition. Indeed, Washington refused to admit in his testimony at sentencing that he ever sold crack cocaine, and he disputed all calculations of the relevant drug quantity. Second, the court also found that Washington perjured himself and obstructed justice in his testimony at sentencing, which precluded any reduction in offense level for acceptance of responsibility. The court concluded that Washington's testimony was false because it was contradicted by the more credible testimony of Brewer, Cole, and Stalets, as well as the cell phone and motel logs. Accordingly, the district court appropriately refused to grant the two-point reduction in Washington's offense level.

Washington also contends that he should have received an additional one-level reduction in his offense level because he "timely notified the government that he would plead guilty"–a gesture that aided his prosecution. But because Washington does not qualify for the initial two-level reduction, he may not be granted the third-level reduction. *See* U.S.S.G. § 3E1.1(b). Even if the sentencing court had granted Washington the two-level reduction, however, he offers no evidence that he "assisted in the investigation or prosecution of his own misconduct." *See id.* Again, a timely plea of guilty does not alone entitle a defendant to the reduction in his offense level for aiding his prosecution. *United States v. Travis*, 294 F.3d 837, 840 (7th Cir.2002). By falsely denying relevant conduct, Washington in fact did the opposite of assisting his prosecution. As a result, the district court appropriately denied Washington a requested third-point reduction in his offense level.

AFFIRMED.