**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert HARRIS, Defendant–Appellant.**

**No. 03–2665.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 2003.

Decided Nov. 20, 2003.

Thomas Edward Leggans, Office of the United States Attorney, Fairview Heights, IL, for Plaintiff–Appellee.

James J. Gomric, Belleville, IL, for Defendant–Appellant.

Before BAUER, MANION, and ROVNER, Circuit Judges.

### ORDER

Robert Harris came home drunk one night searching for his pipe bombs. Scared, his girlfriend called the police in Herrin, Illinois. When police arrived they found the two pipe bombs laying in Harris' driveway—a friend of Harris' girlfriend had taken them there in order to keep them away from Harris. As a precaution, police officers evacuated a two-block area around Harris' home. They subsequently arrested him, and during questioning Harris admitted that the bombs were his. A grand jury indicted him for possessing an unregistered destructive device, *see* 26 U.S.C. §§ 5861(d). Harris pleaded guilty and was sentenced to 55 months' imprisonment. He appeals his sentence, but we affirm.

Harris initially pleaded not guilty. While in jail awaiting trial, he wrote a letter to "Bill," in which he told Bill to deny knowing that Harris "had made or had these things." He also directed Bill to advance to an unidentified woman "that stuff" that "she is always looking for," presumably in the hopes that the woman would not testify against Harris: "If she does not make it to court no case." In the letter Harris identified himself as "Crazy Bob the mad bomber." Harris' cellmate found the letter and gave it to police. Harris later changed his plea to guilty. Harris did not enter into a written plea agreement with the government, but the government did orally promise not to appeal should it fail to convince the district

court to deny Harris a reduction in offense level for acceptance of responsibility.

The probation officer recommended in the presentence report that Harris' base offense level of 18 be increased two levels because his offense involved a destructive device, see U.S.S.G. § 2K2.1(b)(3), and another two levels for obstruction of justice for attempting to tamper with witnesses, see id. § 3C1.1. The probation officer also recommended that Harris' base offense level be decreased three levels for having timely accepted responsibility, see id. § 3E1.1(a), (b). No objections to the report were filed, but at sentencing the government argued that Harris was not entitled to a three-level decrease for acceptance of responsibility for two reasons: 1) defendants who have obstructed justice are presumed not to have accepted responsibility, and 2) Harris pleaded guilty only after getting caught trying to tamper with witnesses. In response Harris insisted that the government had waived both contentions by failing to first make them as written objections to the presentence report as required by Federal Rule of Criminal Procedure 32(f)(1) and SDIL–LR Cr32.1(b). Alternatively, he argued that he was entitled to the decrease because his obstruction was "brief and minor." The court adjourned the sentencing hearing and directed the parties to brief whether Harris was entitled to an acceptance-of-responsibility decrease. When the hearing reconvened two weeks later, the court sided against Harris and denied him the reduction and sentenced him to 55 months' imprisonment followed by three years' supervised release, and fined him $500.

■ Harris argues that the district court wrongly denied him the reduction for two reasons. First, he reasserts that the government's arguments opposing the decrease were untimely. But even if the government forfeited its chance to challenge the probation officer's recommendation, a sentencing court "is not obliged to accept all unchallenged findings and recommendations made in the PSR." United States v. Young, 140 F.3d 453, 457 (2d Cir.1998); see also United States v. Schuler, 34 F.3d 457, 461 (7th Cir.1994). At sentencing, the court in fact acknowledged that it was denying the decrease not because the government asked it to but because it believed that the probation officer's recommendation was not well-founded.

Furthermore, even though the government did not file an objection to the PSR, Harris suffered no prejudice. He had known since his change-of-plea hearing that the government would oppose any decrease for acceptance. And he had additional time to respond to the government's argument after the court requested briefing on the issue. Therefore, the court was free to reject the probation officer's recommendation even if the government violated the local rule requiring written objections to sentencing recommendations.

■ Alternatively, Harris argues that the district court wrongly denied him the decrease even though he established extraordinary circumstances entitling him to it. This court reviews a district court's decision whether or not to grant an acceptance-of-responsibility decrease for clear error, see United States v. Fudge, 325 F.3d 910, 923 (7th Cir.2003), not under the less deferential de novo standard advocated by the defendant. A defendant who obstructs justice is presumed not to have accepted responsibility. Id.; see also U.S.S.G. § 3E1.1, comment (n.1). That presumption may be overcome but only if the defendant demonstrates that his case is "extraordinary." Fudge, 325 F.3d at 923; United States v. Gonzalez, 319 F.3d 291, 300 (7th Cir.), cert. denied, —— U.S. ——, 123 S.Ct. 2289, 156 L.Ed.2d 141 (2003).

Harris contends that he demonstrated to the court that his case is extraordinary for several reasons. First, he argues that his case is extraordinary because he did not resist arrest, confessed, and timely pleaded guilty. But this court has previously held that there is nothing extraordinary about confessing and pleading guilty. *See United States v. Partee*, 301 F.3d 576, 581 (7th Cir.2002) (defendant who had obstructed justice was not entitled to a reduction for acceptance of responsibility merely for pleading guilty); *United States v. Yusuff*, 96 F.3d 982, 989 (7th Cir.1996) (same). Harris cites several cases to support his argument that pleading guilty is an extraordinary circumstance, but his cases are inapposite. Two of the cases do not even address the issue of extraordinary circumstances. In the third, *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir.1993), the defendant obstructed justice *before* he was arrested, while Harris obstructed justice afterwards.

Next, Harris argues that his case is extraordinary because his attempt to tamper with witnesses was "brief and minor," rather than a "far flung effort to undermine the prosecution of the cause [sic]." But the district court did not clearly err when it rejected Harris' characterization of his obstruction as "minor." This court has held that attempts to obstruct justice by influencing witnesses and by concocting lies are inconsistent with acceptance of responsibility. *Fudge*, 325 F.3d at 923; *Partee*, 301 F.3d at 581. Harris relies upon *United States v. Bogas*, 731 F.Supp. 242 (N.D.Ohio 1990), to advocate the opposite conclusion. But in *Bogas* the defendant cooperated with police both before and after his obstructive false statement to an investigator. *Id.* at 252. Harris, on the other hand, merely pleaded guilty, and only after police discovered his attempt to tamper with witnesses.

Finally, Harris contends that his case is extraordinary because, as a result of brain surgery in 1993, he suffers from seizures and depression, and is easily confused. He baldly asserted that these lingering symptoms constitute an extraordinary circumstance, but failed to explain how his seizures, depression, or confusion account for his obstructive conduct. He has therefore failed to meet his burden of showing that his medical condition was an extraordinary circumstance, or that the district court clearly erred in concluding that it was not.

AFFIRMED.