In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3660

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLOS GUTIERREZ-HERRERA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 739--Harry D. Leinenweber, Judge.

ARGUED April 25, 2002--DECIDED June 4, 2002


   Before CUDAHY, RIPPLE, and ROVNER, Circuit
Judges.

   RIPPLE, Circuit Judge.  Carlos Gutierrez-
Herrera ("Gutierrez") pleaded guilty
pursuant to a written plea agreement to
one count of conspiracy to distribute
cocaine, in violation of 21 U.S.C.
secs. 846 and 841(a)(1). At sentencing
the district court found that four
kilograms of cocaine were attributable to
Mr. Gutierrez and sentenced him to 57
months' imprisonment. Mr. Gutierrez
appeals and argues that it was error to
attribute to him more than two kilograms
of cocaine. For the reasons set forth in
the following opinion, we affirm the
judgment of the district court.

I

BACKGROUND

A.  Facts

   In his written plea agreement, Mr.
Gutierrez stipulated to the following
facts. In August 2000, he told co-
defendant Marin Aguayo-Robles ("Marin")
that he had two kilograms of cocaine to
sell. Marin passed this information to
co-defendant Jose Aguayo ("Jose"), who
agreed to find a buyer. Jose did so and
informed Marin, who contacted Mr.
Gutierrez. Mr. Gutierrez agreed to sell
the cocaine to Marin and Jose for
$42,000. Marin told Jose that they could

each make $2,000 on the deal if they resold the two kilograms of cocaine for $46,000. Jose contacted the buyer, who agreed to pay that amount. Marin subsequently made plans with Mr. Gutierrez and Jose for the cocaine to be delivered on August 8, 2000.

On August 8, Mr. Gutierrez delivered the cocaine to Marin and Jose; they agreed that Marin and Jose would pay him after they resold the cocaine later that day. When Jose met with the buyer, however, he was robbed of the cocaine. Between August 8 and August 28, Marin repeatedly told Jose that Mr. Gutierrez and those working with him would harm Jose's family unless Jose returned two kilograms of cocaine or $42,000 to Mr. Gutierrez.

On September 1, 2000, Marin again spoke to Jose who, unbeknownst to Marin and Mr. Gutierrez, had begun working for the FBI. During their conversation Marin blamed Jose for losing the cocaine. Jose then informed Marin that he would have $42,000 or two replacement kilograms of cocaine for Mr. Gutierrez by September 8. Jose asked Marin if Mr. Gutierrez and his associates would refrain from taking any retaliatory action against him or his family before he paid Mr. Gutierrez, and Marin agreed to speak to Mr. Gutierrez on his behalf.

On September 7, Jose met with Marin at his job to discuss their debt to Mr. Gutierrez, and Jose told Marin that he would have replacement cocaine to give to Mr. Gutierrez the next day. On September 8, Jose and Marin met at Jose's residence, and Jose gave Marin two kilograms of cocaine that had been supplied to Jose by the Government. The FBI and Cicero, Illinois, police conducted a traffic stop of Marin's car as he left Jose's house, and they arrested Marin and recovered the two kilograms of cocaine. Marin immediately began cooperating with the FBI, and agreed to deliver the cocaine to Mr. Gutierrez as planned. Later that day, Marin called Mr. Gutierrez and told him in coded language that he had cocaine for Mr. Gutierrez. This call was recorded by the FBI. Marin told Mr. Gutierrez that he was having car trouble, and Mr. Gutierrez agreed to leave a car at a Popeye's restaurant for Marin's use in bringing the cocaine to him.

Mr. Gutierrez drove a grey Buick Regal to the Popeye's, and he was followed by a green Mazda 626. Mr. Gutierrez parked the Regal next to Marin's car, then left the Regal and accompanied Marin to the trunk of Marin's car. Marin opened the trunk and showed Mr. Gutierrez two kilograms of cocaine inside a paper bag. With Mr. Gutierrez's agreement, Marin placed the bag of cocaine in the passenger compartment of the Regal. Mr. Gutierrez got into the Mazda and attempted to leave the parking lot, but was stopped and arrested by the police and the FBI.

## B. District Court Proceedings

On October 4, 2000, Mr. Gutierrez, Marin and Jose were indicted. Count I of the indictment charged all three with conspiracy to distribute cocaine, in violation of 21 U.S.C. secs. 846 and 841(a)(1), and Count II charged them with possession with intent to distribute cocaine in violation of 21 U.S.C. sec. 841(a)(1) for the August 8 transaction. Count III of the indictment charged Mr. Gutierrez and Marin with possession with intent to distribute cocaine for the September 8 transaction. On May 25, 2001, Mr. Gutierrez pleaded guilty to Count I pursuant to a written plea agreement. At sentencing the district court found that four kilograms of cocaine should be attributed to him--the two kilograms he delivered to Marin and Jose on August 8 and the two kilograms he accepted from Marin on September 8--and sentenced Mr. Gutierrez to 57 months' imprisonment. Mr. Gutierrez timely appealed.

## II

## DISCUSSION

## A. Standard of Review

Mr. Gutierrez's only argument on appeal is that the district court erred by attributing to him four, rather than two, kilograms of cocaine. We review the district court's drug quantity determination for clear error. United States v. Huerta, 239 F.3d 865, 875 (7th Cir. 2001). Clear error exists only when this court is left with a "'definite and firm conviction that a mistake has been committed.'" Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395

(1948)).

B.  Relevant Conduct/Reasonable Foreseeability

   Mr. Gutierrez argues that a four-kilogram quantity was not reasonably foreseeable to him because the conspiracy he entered into with Marin and Jose was for the sale of two kilograms. Mr. Gutierrez argues that, because he pleaded guilty to conspiracy, the relevant conduct for which he can be held responsible under U.S.S.G. sec. 1B1.3 "is co-extensive with the responsibility under the conspiratorial agreement." This argument is incorrect. Under U.S.S.G. sec. 1B1.3, a defendant's base offense level is computed on the basis of both his count(s) of conviction and all "relevant conduct." When a drug offense is involved, relevant conduct encompasses "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. sec. 1B1.3(a)(2), including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant." See U.S.S.G. sec. 1B1.3(a)(1)(A). Thus, whether or not Mr. Gutierrez's effort to reacquire the lost kilograms was part of the conspiracy to distribute them initially, his personal involvement in the September transaction renders it relevant conduct.
   When a conspiracy defendant personally engages in illegal conduct, his actions are deemed "relevant conduct" for sentencing purposes without resort to the "reasonable foreseeability" test of U.S.S.G. sec. 1B1.3(a)(1)(B). For example, in United States v. Crockett, 82 F.3d 722, 729 (7th Cir. 1996), a defendant cocaine supplier argued that his sale to a co-conspirator, who by then was cooperating with authorities, did not constitute relevant conduct in part because the transaction was made after the conspiracy had ended and thus the drugs involved were not "reasonably foreseeable" to him. We held the defendant's argument mistaken because the transaction involved his own conduct and therefore the requirement of "reasonable foreseeability" did not apply. Id. at 729 n.3; see also United States v. Dorsey, 209 F.3d 965, 968 (7th Cir. 2000) (gun possession that defendant personally aided by supplying purchase money was

relevant conduct without resort to the reasonable foreseeability analysis of U.S.S.G. sec. 1B1.3(a)(1)(B)); United States v. Corral-Ibarra, 25 F.3d 430, 438 (7th Cir. 1994) (defendant who played "direct, personal role" in drug transaction liable for entire quantity of drugs involved without resort to reasonable foreseeability analysis)./1 The same is true here; Mr. Gutierrez went to the Popeye's for the specific purpose of meeting Marin and accepting delivery of the two kilograms of cocaine. Mr. Gutierrez personally committed the wrongful act, and the district court did not clearly err by attributing the two kilograms of cocaine to him as relevant conduct under sec. 1B1.3(a)(1)(A) without resorting to the "reasonable foreseeable" analysis of sec. 1B1.3(a)(1)(B).

C. Sentencing Entrapment or Manipulation

Mr. Gutierrez also argues that he should not be held responsible for the two kilograms involved in the September 8 exchange because that transaction was initiated by the Government. He asserts that if the Government had given Jose and Marin $42,000 to return to him instead of cocaine, he could not have been found responsible for the additional two kilograms. To the extent that Mr. Gutierrez is asserting that the Government engaged in "sentencing entrapment" in this case, his argument fails. Sentencing entrapment occurs "'when the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense.'" United States v. Estrada, 256 F.3d 466, 473-74 (7th Cir. 2001) (quoting United States v. Garcia, 79 F.3d 74, 75 (7th Cir. 1996)). To show entrapment, a defendant must prove that he lacked a predisposition to commit the crime, but that "his will was overborne by unrelenting government persistence." United States v. Cotts, 14 F.3d 300, 306 n.2 (7th Cir. 1994); see also United States v. Searcy, 284 F.3d 938, 942 (8th Cir. 2002) ("'entrapment . . . focuses on the defendant's predisposition to commit the crime in question. . . . [The question then becomes whether] the defen dant was predisposed to commit the crime, apart from the government's inducement.'" (quoting United States v. Berg, 178 F.3d 976, 980 (8th Cir. 1999))); United States v. Jones, 18 F.3d 1145, 1153 (4th Cir.

1994) (an essential element of sentencing entrapment is the defendant's lack of predisposition to commit the crime). Mr. Gutierrez has not made such a showing here.

Mr. Gutierrez clearly demonstrated a predisposition to be involved with the distribution of cocaine by admitting that he supplied two kilograms to Jose and Marin for resale. Furthermore, he was a willing participant in the September 8 transaction; he traveled to the Popeye's restaurant for the specific purpose of picking up two kilograms of cocaine. Mr. Gutierrez admitted during his plea colloquy that he went to the restaurant knowing that a drug deal would take place:

THE COURT: Well you knew it was a drug deal, right?

MR. GUTIERREZ: Yes.
THE COURT: You and your co-defendant Marin Aguayo-Robles and Jose Aguayo were involved--you were setting up a two-kilogram deal, right, cocaine deal?

MR. GUTIERREZ: Yes.

THE COURT: The cocaine got stolen by the buyer, right?

MR. GUTIERREZ: Yes.

THE COURT: Somebody went out and got two more kilograms to fulfill the original deal, correct?

MR. GUTIERREZ: Yes.

R.72-1 at 20. Mr. Gutierrez did not present any evidence to show that the Government somehow coerced him to participate in the September 8 transaction; rather, the evidence shows that he willingly went to the Popeye's to procure the two replacement kilograms of cocaine. It was Mr. Gutierrez's expectation that he would receive either money or replacement cocaine that led to the September 8 transaction, not pressure by the Government. He therefore cannot show that sentencing entrapment occurred.

Conclusion

For the foregoing reasons, we affirm Mr. Gutierrez's sentence.

AFFIRMED

FOOTNOTES

/1 Other circuits have similarly held that the "reasonable foreseeability" test of sec. 1B1.3(a)(1)(B) does not apply when a defendant personally engages in the wrongful conduct. See United States v. Anderson, 174 F.3d 515, 528 n.4 (5th Cir. 1999); United States v. Strange, 102 F.3d 356, 360 (8th Cir. 1996); United States v. Lockhart, 37 F.3d 1451, 1454 (10th Cir. 1994); United States v. Tran, 16 F.3d 897, 905 (8th Cir. 1994).