In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1335

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS J. SUMNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 40079—**J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 26, 2002—DECIDED APRIL 8, 2003

Before COFFEY, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This is Thomas Sumner's second effort to obtain some relief from a 132-month sentence for drug dealing. On his first appeal to this court, he was partially successful: we vacated his sentence and remanded for resentencing because the district court had not made adequate factual findings linking his uncharged trafficking of a substantial amount of crack cocaine to the offense of conviction. *United States v. Sumner*, 265 F.3d 532 (7th Cir. 2001) (*Sumner I*). At the resentencing hearing, the district court made the necessary factual findings and then imposed the same 132-month sentence as before.

Sumner has appealed again, but this time we find no merit in his arguments and therefore affirm.

**I**

Although we reviewed the facts in our earlier opinion, we repeat the highlights for ease of reference. In August 1999, the FBI and the Federal Housing Drug Task Force conducted a sting operation against the then-seventy-five-year-old Sumner, who was selling drugs from his home in Carrier Mills, Illinois. Three different confidential sources purchased cocaine from Sumner. One named customer, Chrissy Smith, reported upon leaving his residence that she had just seen someone purchase a large amount of crack cocaine. On September 15, 1999, agents executed a search warrant and found in the house powder cocaine and marijuana, drug paraphernalia, and firearms. No crack cocaine was recovered during the search.

Sumner was arrested and, after waiving his *Miranda* rights, made a series of statements concerning the timing, amounts, and types of drug sales he had engaged in beginning in "possibly the winter of 1997." Sumner specifically admitted to selling crack cocaine for a period of two months in 1997. He stopped, he explained, after he witnessed one of his customers in the throes of a convulsive reaction to the crack; from that time onward, he limited his stock to powder cocaine and marijuana. (Smith, of course, claimed otherwise, as she reported a crack sale as late as August of 1999.) Sumner said that Troy Ash had been his principal supplier until August 1998, when Ash was arrested.

At a proffer interview, Sumner provided still more information, confirming and enlarging upon information he provided in the post-arrest interview. He again named Ash as his supplier until Ash's arrest. After Ash left the picture, Sumner turned, in July 1999, to a man named

Mark LNU (or last name unknown, in FBI jargon—we will call him "Mark"). Mark supplied Sumner until Sumner's September 1999 arrest. Sumner admitted that he had allowed others to cook powder cocaine into crack cocaine at his residence. Cooperating witnesses confirmed many of these details, although at least one source claimed to have purchased powder cocaine from Sumner as early as April 1999, which was three months before Sumner claims he located Mark as a source.

The post-arrest interview formed the basis for the pre-sentence report (PSR). Based on the amounts and timing of sales Sumner reported in the post-arrest interview, the Probation Office determined that he sold 56.7 grams of crack cocaine in the winter of 1997 (with Ash as supplier), 198.45 grams of powder cocaine from January to July 1998 (again with Ash as supplier), 198.45 grams of powder cocaine from April to September 1999 (with Mark as supplier), and 34.3 grams of marijuana.

Sumner made several objections to the PSR. In them, he presented a very different account of his dealings than he had done in his post-arrest and proffer interviews. Many of the PSR findings, he now claimed, lacked "sufficient indicia of reliability." He denied ever receiving powder cocaine from Ash. Instead, according to Sumner's new account, Ash gave him only seven grams of crack cocaine. Along similar lines, Sumner claimed that he had received only six ounces of powder cocaine from Mark. Sumner summarized the amounts that he believed could be counted as relevant conduct as follows: seven grams of crack cocaine, six ounces (which corresponds to approximately 170 grams) of powder cocaine, and 34 grams of marijuana. The PSR, in contrast, recommended that the court find 56.7 grams of crack, 397 grams of powder cocaine, and 34 grams of marijuana. When specifically asked about the relevant-conduct issue, defense counsel reiterated the amounts Sumner was advocating. Defense counsel

also expressed concern that the PSR erroneously found that at least some of the relevant conduct took place during Sumner's probation from August 1996 to October 1998 on unrelated charges of public indecency.

At the ensuing sentencing hearing, the court heard evidence from Agent Kirkham, who had been present at both the post-arrest and proffer interviews. Agent Kirkham testified about statements Sumner made on both occasions. Sumner also testified, changing his story for a third time. In contradiction to his post-arrest interview, proffer interview, and objections to the PSR, Sumner now claimed that he had briefly dealt in crack cocaine, but in 1992 rather than 1997, and that he never did so again. He also stated that he had no other drug dealings until he began selling powder cocaine in March of 1999. Sumner also specifically testified that he did not sell any drugs during his probation, between October 1997 and October 1998. He explained that he kept marijuana around because "girls" liked it, but that the "girls" in question were always of adult age. Sumner was then forced to admit that a 16-year-old girl was present in his house at the time of his arrest.

The district court rejected all of Sumner's shifting stories and effectively adopted the PSR. It sentenced him to 132 months' imprisonment, based on 1,213.72 kilograms of marijuana equivalent as well as guidelines enhancements for violation of his probation and possession of firearms, and a reduction for acceptance of responsibility. Sumner then appealed.

On appeal, we vacated his sentence and remanded for resentencing on a single ground: that the district court had failed to make adequate findings of fact whether the crack cocaine dealings in 1997 were part of the same course of conduct for sentencing purposes. See *Sumner I*, 265 F.3d at 539-40. Although Sumner had forfeited that issue by

failing to raise it before the district court, we nonetheless found plain error. *Id.*

Sumner took the remand as a more open-ended invitation to continue challenging his sentence. As contemplated by our mandate, he filed supplemental objections to inclusion of the crack cocaine dealings. In addition, however, he challenged the inclusion of 198.45 grams of powder cocaine allegedly received from Ash. This was an objection Sumner had initially made to the PSR, but he did not include it in his first appeal to this court. Sumner also renewed another of his objections to the PSR—again, one he had not raised in his first appeal—that he did not deal in crack or powder cocaine during his probation. The government filed a Supplemental Addendum to the PSR in opposition.

At the resentencing hearing, the district court heard additional testimony from Agent Kirkham, but nothing more from Sumner. The district court specifically found Agent Kirkham's testimony credible and specifically rejected Sumner's. It found that the 1997 crack dealings should be included in the relevant conduct calculations, because they were sufficiently linked in terms of similarity, regularity, and temporal proximity to Sumner's sales of powder cocaine. Finally, the court found that Sumner's dealings with drugs supplied by Ash took place during Sumner's probation. The court again sentenced Sumner to 132 months' imprisonment. This appeal followed.

## II

We turn first to Sumner's argument that the district court improperly allowed the government to present new testimony at the remanded sentencing hearing. This contention presents a question of law, which we generally review *de novo*. See *Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir. 1998).

Sumner's sole authority for his argument is our decision in *United States v. Wyss*, 147 F.3d 631 (7th Cir. 1998). In *Wyss*, the defendant was charged with marijuana distribution and was sentenced based on uncharged possession of cocaine, at least some of which defendant claimed he consumed rather than distributed. We held that any cocaine Wyss had for personal consumption could not be included in the relevant conduct analysis for distribution, and that it was the government's burden to prove the relative amounts devoted to consumption and distribution. The case was remanded for resentencing, but importantly, because Wyss had specifically objected to inclusion of the personal-use cocaine in the relevant conduct determination and the government had offered no contrary evidence, we held that the personal-use percentage question was now closed: "[t]he government was entitled to only one opportunity to present evidence on the issue." *Id.* at 633.

Sumner contends that *Wyss* stands for the broad proposition that the government may never offer new evidence on a sentencing remand. He sees no difference between an issue that was fully explored at the initial sentencing hearing and one that received no attention, but was nevertheless reviewed on appeal under the plain error standard. We disagree. Such a rule would require the government to anticipate and present evidence on every conceivable issue that might later be found to constitute plain error on appeal. This would impose an impossible burden on the government. Furthermore, it would actually give the defendant a benefit from plain error review of a forfeited issue, instead of merely relieving him or her from the consequences of failure to preserve the issue. Nothing in FED. R. CRIM. P. 52(b) supports such a consequence. We conclude that the *Wyss* rule does not preclude the government, on a sentencing remand, to introduce evidence relevant to points that the defendant forfeited but that were considered on plain error review by this court.

**III**

We turn next to Sumner's challenges to three separate factual findings made by the district court at resentencing: first, whether the district court erred in finding that the crack and powder cocaine dealings were part of the same course of conduct for sentencing purposes (the issue we remanded to the court); second, whether the district court erred in finding that half of Sumner's powder cocaine dealings were also part of the relevant course of conduct; and third, whether the district court erred in determining that Sumner committed drug offenses during the term of his probation, warranting a two-point enhancement. To the extent that these arguments are properly before us (which we discuss below), our review is for clear error only. See *United States v. Morrison*, 207 F.3d 962, 967 (7th Cir. 2000); *United States v. Edwards*, 115 F.3d 1322, 1330 (7th Cir. 1997).

**A**

First, we take up Sumner's claim that the district court erred in finding that his crack cocaine dealings were relevant conduct for sentencing purposes. The core of Sumner's contention is that the alleged crack cocaine dealings lack the similarity, regularity, and temporal proximity to the later powder cocaine dealings required by Section 1B1.3 of the Sentencing Guidelines to justify treating them as part of a single course of conduct.

In calculating a defendant's base offense level under the Sentencing Guidelines, "the sentencing court must consider types and quantities of drugs not specified in the counts of conviction but that were 'part of the same course of conduct or common scheme or plan' as the convicted offenses." *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir. 1994) (quoting U.S.S.G. § 1B1.3(a)(2)); *United States v. Acosta*, 85 F.3d 275, 279 (7th Cir. 1996). This

"relevant conduct" rule requires sentencing courts to consider quantities of drugs not specified in the counts of conviction, provided "the unconvicted activities bore the necessary relation to the convicted offense." *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991). In general, offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), Application Note 9(B). Courts also look for "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity." *Acosta*, 85 F.3d at 281 (citations and quotation marks omitted). When one of these factors is relatively weak or absent, a stronger showing of the other two will support a finding of relevant conduct. See U.S.S.G. § 1B1.3(a)(2), Application Note 9(B); see also *Acosta*, 85 F.3d at 281; *United States v. Sykes*, 7 F.3d 1331, 1336 (7th Cir. 1993). In *Sumner I*, it was the fact that the district court had not made any findings at all on the subject that required a remand. See 265 F.3d at 540.

The district court found that the crack dealings were similar for several reasons, including the facts that comparable quantities of drugs were sold, all sales were made from Sumner's residence, and Sumner was involved (either actively or passively) in the cooking of powder cocaine into crack at his residence. Even Sumner conceded that he was selling "2 ounces of powder cocaine a month" for a seven-month period prior to his September 1999 arrest, which is not very different from the "quarter ounce per week of crack" in 1997 to which he admitted. The fact that the Guidelines treat powder and crack cocaine differently for sentencing purposes in no way prevents the two substances from being included in one course of conduct. Indeed, we have cases in which two entirely different substances meet that test. See, *e.g.*, *Acosta*, 85 F.3d at 281

(finding cocaine as relevant conduct where only heroin charged). We find no clear error in the district court's finding that the requisite similarity existed, based on the facts it noted.

Sumner next challenges the district court's finding of regularity. In *Sykes*, this court defined "regularity" as "repeated acts or events that take place '[a]t fixed or certain intervals' or '[i]n accordance with some consistent or periodical rule or practice.'" 7 F.3d at 1337 (quoting BLACK'S LAW DICTIONARY 1286 (6th ed. 1990)). Under this definition, Sumner's argument is a non-starter. By his own admission, Sumner dealt a quarter ounce of crack cocaine per week (and thus two ounces per month) over a two-month period in 1997, followed by a similar monthly distribution of powder cocaine for a seven-month period. These transactions easily meet the *Sykes* definition.

Perhaps recognizing this, Sumner also claims that the district court erred by relying exclusively on statements he made at the post-arrest interview regarding the amount and the timing of his 1997 crack sales. A defendant has the burden of producing at least some evidence that the PSR is unreliable or inaccurate beyond a bare denial, if the facts set forth in a PSR bear "sufficient indicia of reliability to support [their] probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Coonce*, 961 F.2d 1268, 1280-81 (7th Cir. 1992); *Acosta*, 85 F.3d at 283; *United States v. Lanterman*, 76 F.3d 158, 161 (7th Cir. 1996). If, however, the PSR is contradictory, inconsistent, or conclusory, the burden lies in the first instance with the government to produce evidence from which the district court can make a reliable finding. See *United States v. Bacallao*, 149 F.3d 717, 720 n.2 (7th Cir. 1998); *Acosta*, 85 F.3d at 283. Sumner claims that the PSR here was so flimsy that the burden lay on the government to support its allegations.

This puts him in an odd position, however, given the district court's decision to credit Agent Kirkham's account of Sumner's post-arrest and proffer interviews. Sumner's own statements, as reported by Agent Kirkham, provided the basis for the PSR's conclusions. The district court was entitled to credit those admissions even in the absence of independent evidence corroborating them. See *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000); see also *United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993) (testimony of one witness, even a biased witness, may be sufficient to support a finding of fact); *United States v. Garcia*, 66 F.3d 851, 857 (7th Cir. 1995) (trial court may credit uncorroborated testimony of a convicted felon and government informant). The only wrinkle here is that Sumner later retracted his post-arrest admissions, leading to a swearing match at the sentencing and resentencing hearings between Sumner and Agent Kirkham. On both occasions, the district court expressly resolved the credibility contest in favor of Agent Kirkham. That is a call we have no reason to disturb. The district court was also entitled to conclude that the most likely explanation for Sumner's sudden change in memory at the sentencing hearing—and in particular his outright denial that he sold any crack at all after 1992—is that Sumner was made aware of the implications of his earlier statements for the severity of his eventual sentence. This, in a sense, was another credibility call that there is no reason to question on clear error review.

Last, we consider the district court's finding of temporal proximity between the crack and the cocaine sales. Sumner relies principally on the time that elapsed between his 1997-98 dealings in cocaine supplied by Ash and his 1999 dealings as supplied by Mark to show a lack of the necessary temporal proximity. We have held in the past, however, that an involuntary respite from criminal

conduct does not preclude a finding of temporal proximity. See *Cedano-Rojas*, 999 F.2d at 1180; *United States v. Nunez*, 958 F.2d 196, 198 (7th Cir. 1992). Whatever lapse occurred between the Ash and the Mark phase of Sumner's dealings was involuntary on his part and had more to do with Ash's August 1998 arrest than any crisis of conscience on Sumner's part. Finally, Sumner admitted that he distributed both crack and powder cocaine that he received from Ash. To the extent his dealings in the two substances are similar, the relevant temporal lapse is not between the 1997 crack and the 1999 powder cocaine dealings, but rather between the crack and powder cocaine dealings leading up to Ash's August 1998 arrest and Sumner's turning to Mark as a substitute supplier sometime in the spring or summer of 1999. Depending on how much cocaine Sumner had on hand when Ash was arrested, the lapse in actual dealing may have been even shorter.

In sum, we find no clear error in the district court's conclusion that the 56.7 grams of crack cocaine should be included as relevant conduct for purposes of computing his guideline level.

**B**

Sumner would like us to resolve two more points as well: whether the district court erred in including half of his powder cocaine dealings for relevant conduct purposes, and whether the court should have imposed a two-point enhancement under Section 4A1.1(d) of the Sentencing Guidelines for violation of the probation he was serving for his earlier public indecency offense. We conclude that neither point is open to him anymore, and thus we do not consider them.

With respect to the powder cocaine argument, the government has argued that Sumner's failure to raise it on his first appeal means that he has waived it for all time. We are not sure that strict waiver applies in these cir-

cumstances, given the fact that Sumner did file an appropriate objection in the district court to the PSR, but we are certain that the law-of-the-case doctrine precludes him from raising it now. We have repeatedly stated that changes in litigation position on successive appeals are barred except where justified by intervening authority, new and previously undiscoverable evidence, or other changed circumstances. See *People Who Care v. Rockford Bd. of Educ.*, 171 F.3d 1083, 1088 (7th Cir. 1999) (collecting cases); see also *United States v. Wilson*, 131 F.3d 1250, 1253 (7th Cir. 1997) (vacating a newly assigned offense level "because the district court exceeded the scope of our remand in reassessing the question of relevant conduct"); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("A party cannot use the accident of a remand to raise in a second appeal an issue that [she] could just as well have raised in the first appeal because the remand did not affect it."). None of those exceptions applies here, and thus we do not consider this point further.

The posture of Sumner's argument about the two-point enhancement under Section 4A1.1(d) of the Sentencing Guidelines for violation of his probation served for his earlier public indecency offense is the same. As with his powder cocaine claims, Sumner made objections to the PSR, but he did not raise the issue of the probation enhancement in his first appeal. It too cannot be raised at this late date, because of the law-of-the-case doctrine. (Sumner is not losing anything here, because it is a matter of record that his probation officially ran from August 1996 to October 1998, and he admitted receiving both crack and powder cocaine from Ash from the winter of 1997 through August 1998.)

## IV

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*