**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodney T. CRATER, Defendant– Appellant.**

**No. 03–1840.**

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 20, 2003.

Decided Oct. 22, 2003.

## ORDER

Rodney T. Crater pleaded guilty without a plea agreement to two counts of distributing crack cocaine, 21 U.S.C. § 841(a)(1), and the district court sentenced him to 235 months' imprisonment and 3 years' supervised release on each count, the sentences to run concurrently. Crater appeals, but his appointed counsel has concluded that all grounds for appeal would be frivolous and moves to withdraw. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Crater filed a response under Circuit Rule 51(b) and a motion to have counsel withdrawn and substitute counsel appointed. Counsel's brief is facially adequate, so we confine our attention to the potential issues identified in counsel's brief and in Crater's response. *See United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997) (per curiam).

Counsel first evaluates whether Crater could challenge his guilty pleas because the district court did not literally comply with Fed.R.Crim.P. 11. Counsel properly considered this question because Crater suggests--as is evident in his Rule 51(b) response--that he wants his guilty pleas set aside. *See United States v. Knox,* 287 F.3d 667, 671 (7th Cir.2002). But Crater did not ask to withdraw his pleas in the district court, so we would review any alleged deficiencies in the court's plea colloquy only for plain error. *United States v. Vonn,* 535 U.S. 55, 73, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *United States v. Driver,* 242 F.3d 767, 770 (7th Cir.2001).

Counsel directs our attention to two omissions in the court's plea colloquy. First, the court did not inform Crater of the effect of his supervised release. This was a former Fed.R.Crim.P. 11(c)(1) re-

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

quirement before the 2002 amendments.[1] This could not be plain error, however, because Crater's combined term of imprisonment and supervised release, 271 months, is less than the total statutory maximum sentence of 40 years that the court told Crater he could receive if convicted on both counts. *United States v. Schuh,* 289 F.3d 968, 974 (7th Cir.2002). Second, the court did not tell Crater that he would not have a trial if his guilty plea was accepted. Fed.R.Crim.P. 11(b)(1)(F) (formerly Fed.R.Crim.P. 11(c)(4)). This too could not be plain error because the court did explain to Crater in detail his right to trial, and Crater acknowledged that he understood that right. *United States v. Maeder,* 326 F.3d 892, 893 (7th Cir.2003). We thus agree with counsel that the contemplated challenges to Crater's pleas would be frivolous.

In his Rule 51(b) response, Crater asserts that his guilty pleas should be set aside because the court made several errors, and that his trial counsel was ineffective for not alerting him to these errors before allowing him to plead guilty. Crater first insists that, under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the court should have told him that the government had to prove drug quantity beyond a reasonable doubt and that his indictment should have specified a drug quantity. Not so. Drug quantity did not affect Crater's statutory maximum under 21 U.S.C. § 841(b)(1)(C), so it did not have to be specified in his indictment or proved beyond a reasonable doubt. *United States v. Wallace,* 276 F.3d 360, 369 (7th Cir.2002). Crater also complains that he pleaded guilty only because the court threatened him with life in pris-

on, which gave him a "false impression" of the seriousness of his offense. Not true. The court correctly informed Crater at his plea hearing that he could be sentenced to 20 years on each count of the indictment, for a maximum term of 40 years. And because in neither instance did the court mislead Crater, it follows that his trial counsel could not have been ineffective in failing to bring the purported mistakes to Crater's attention.

■ Counsel also considers whether Crater could challenge his prison sentence based on objections he raised in the district court. The first of these concerned the amount of crack attributed to Crater as relevant conduct, which the probation officer set at 1,042 grams after interviewing the investigating officers and several of Crater's former associates. Crater admitted responsibility for only 19.23 grams, and asserted that the PSR contains inflated drug calculations because of misrepresentations by the investigating officers and unsupportable allegations by "jailhouse snitches." Crater further claimed that he was a victim of mistaken identity and that the man actually responsible for the drug trafficking described in the PSR was a dead crack dealer who closely resembled him. But the court heard testimony from the persons identified in the PSR and found that testimony credible. Crater did not produce any evidence that contradicted the PSR, and the court did not believe Crater's unsupported allegations. This is exactly the type of credibility determination that we would not disturb on clear error review. *United States v. Sumner,* 325 F.3d 884, 890–91 (7th Cir.2003). This is true even if the government's witness

1. The 2002 amendments altered the text of former Rule 11(c)(1) so that a court is now expressly required just to inform a defendant of the "term" of supervised release but not the "effect" of any supervised release term.

*See* Fed.R.Crim.P. 11(b)(1)(H). This amendment does not apply to Crater, as he pleaded guilty October 15, 2002, and the amendments did not take effect until December 1, 2002.

were "jailhouse snitches," as Crater alleges. *See United States v. Blalock,* 321 F.3d 686, 690 (7th Cir.2003).

■ Crater also disputed the court's application of the adjustment for possessing a weapon, *see* U.S.S.G. § 2D1.1(b)(1). Crater was subject to this adjustment as long as a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n. 3. A weapon is "connected with the offense" if it was possessed during any relevant conduct. *United States v. Adams,* 125 F.3d 586, 596 (7th Cir.1997). The government met its burden to show that a weapon was connected with the offense. During the relevant time, Crater was arrested for speeding and found with a firearm and $2,300 in currency. A witness testified that just before this arrest she had given him $2,300 from drug sales. And another witness testified that he had seen Crater with a gun while selling drugs at his residence. Crater did not produce any evidence to show that it was clearly improbable that the weapon was connected with his drug trafficking activities. Thus, it would be frivolous for him to argue that the court clearly erred in applying the two-level firearm adjustment. *Id.*

■ Another sentencing objection concerned acceptance of responsibility, a reduction denied by the court because Crater contested the drug calculations in his PSR and then produced no credible evidence beyond simply denying the PSR's conclusions. The district court has discretion to refuse the decrease for acceptance of responsibility when it concludes that a defendant has falsely denied relevant conduct, even if the defendant pleaded guilty. *See* U.S.S.G. § 3E1.1(a), cmt. n. 1(a); *United States v. Tankersley,* 296 F.3d 620, 622–23 (7th Cir.2002). Here again it would be frivolous for Crater to assert clear error in this determination.

■ The sentencing court also denied Crater's request for a "safety valve" reduction. U.S.S.G. § 2D1.1(b)(6); *see* U.S.S.G. § 5C1.2. Crater was not entitled to a "safety valve" reduction because he possessed a firearm in connection with the offense or its relevant conduct. *See* U.S.S.G. § 5C1.2(a)(2), cmt. n. 3. Counsel is correct that any argument about this adjustment would likewise be frivolous.

Accordingly, Counsel's motion to withdraw is GRANTED; Crater's motion for appointment of substitute counsel is DENIED; and the appeal is DISMISSED.