**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bernardo PEREZ, Defendant–
Appellant.**

No. 03–2662.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 2003.

Decided Jan. 6, 2004.

Lisa A. Wesley, Michelle L. Jacobs, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Nancy Joseph, Federal Defender Services of Eastern Wisconsin, Inc., Milwaukee, WI, for Defendant–Appellant.

Before POSNER, RIPPLE, and WILLIAMS, Circuit Judges.

**ORDER**

A jury found Bernardo Perez guilty of two counts of distributing cocaine. In cal-

culating his offense level for sentencing, the probation officer included as relevant conduct 2 kilograms of marijuana and 57.45 kilograms of marijuana-equivalent that Mr. Perez either sold during controlled buys, was storing in his bedroom, or admitted to investigators. In addition, the probation officer counted 615 kilograms of marijuana found in the basement of Mr. Perez's apartment building at the time of his arrest. Mr. Perez objected to the inclusion of the 615 kilograms. He argued that it was not relevant conduct to his convictions for distributing cocaine. The district court disagreed and adopted the findings of the probation officer. Mr. Perez appeals his sentence only with regard to the 615 kilograms of marijuana. For the reasons set out in this order, we affirm the judgment of the district court.

## I

## BACKGROUND

Mr. Perez and his brother were brought to the attention of the Brown County Drug Task Force by a confidential informant who told investigators in February 2002 that she had been buying cocaine and marijuana from the two brothers for a few months. Between February 2002 and the end of May 2002, the task force made four controlled buys from Perez and five from his brother. On most occasions, an undercover officer accompanied the informant and met either Mr. Perez or his brother at the apartment that they shared or at a designated location in Green Bay, Wisconsin. Each transaction involved less than 15 grams of cocaine, except that, on one occasion, the undercover officer also bought a pound of marijuana from Mr. Perez.

On June 7, 2002, the task force arrested Mr. Perez and his brother and executed a search warrant for their residence. Offi-

cers searched the apartment and found a safe in Mr. Perez's bedroom that contained 124 grams of cocaine, a .25 caliber handgun, a digital scale, $4,500 in a bag marked "verde," and $2,950 in a bag marked "blanca." Next to the safe in the closet was over a pound of marijuana. When the task force searched the basement of the apartment building, they also found—to their acknowledged surprise—615 kilograms of marijuana, most of it packed in eleven cardboard boxes locked in a storage closet. All but one of the boxes contained five to seven 20–pound marijuana "bricks" wrapped in plastic and coated with grease and oil; the remaining box had been opened and contained only one brick. An unwrapped 21–pound brick was found in a nearby freezer along with a scale capable of weighing up to one pound.

Mr. Perez told police the following. Hugo Campa–Gonzales, a friend of the Perez brothers, had recently come to Green Bay from California and was staying with the two. On June 7, Campa told Mr. Perez to meet him at a restaurant; when Mr. Perez arrived, he was met by his brother and Campa, who asked for help in transferring boxes from a semi-trailer to a rental truck parked behind the establishment. After moving the boxes, Mr. Perez went back inside the restaurant while his brother and Campa departed in the rental truck. When Perez returned home, he found his brother and Campa unloading the boxes into the basement of his apartment building. Mr. Perez helped the two move the boxes out of the truck but not into the basement; when a box ripped open, he noticed that it contained marijuana. Mr. Perez also admitted to police that he had been selling gram or ounce quantities of cocaine. He also admitted to selling four or five half-pound quantities of marijuana over a three month period.

Campa was arrested at the same time as Mr. Perez and his brother and recounted a similar but slightly different version of events. He admitted coming to Green Bay to pick up and deliver the 615 kilograms of marijuana in exchange for $5,000. After he took possession of the marijuana from the semi-trailer, someone was to call and arrange pickup of the entire load, but the task force intervened instead. Campa stated that Mr. Perez and his brother had helped assemble the cardboard boxes in which the marijuana was found, and afterward all three men went to where the semi-trailer was parked. After moving the marijuana into the rental truck, they went back to the brothers' residence and stashed it in the basement. In the process, they opened one of the plastic-wrapped packages to inspect the marijuana.

Mr. Perez was indicted on one count of possession with intent to distribute the 615 kilograms of marijuana, 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute cocaine, *id.;* two counts of distributing cocaine, *id.;* and one count of possession of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). A jury found him guilty of the two distribution charges, not guilty of the firearm charge, and hung on the remaining cocaine and marijuana possession charges.

In preparing the presentence report, the probation officer added the 615 kilograms of marijuana to the drug amounts (in marijuana-equivalents) from the undercover buys, the safe, and Perez's admissions to the police. Mr. Perez objected to counting the 615 kilograms; he argued that it was not relevant conduct and contrasted it with the comparatively small-scale behavior underlying his cocaine convictions. The district court denied the objection and held him responsible for the 615 kilograms of marijuana, raising Mr. Perez's base of-

fense level from 20 to 28. *See* U.S.S.G. § 2D1.1(c). Mr. Perez also received a two-level upward adjustment for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1), resulting in a total offense level of 30, a criminal history category of II, and a sentencing range of 108 to 135 months. The court sentenced him to 108 months' imprisonment and three years' supervised release.

## II

## DISCUSSION

### A. Standard of Review

The sole issue Mr. Perez raises on appeal is whether the 615 kilograms was properly included in his base offense level as relevant conduct. We review the district court's determinations of relevant conduct for clear error as long as the court has applied the proper legal framework, *United States v. Thomas,* 199 F.3d 950, 954 (7th Cir.1999); however, "we may affirm a sentence adjustment on any ground supported by the record," *United States v. Schuh,* 289 F.3d 968, 973 (7th Cir.2002). Here, we conclude that the 615 kilograms was properly attributed to Mr. Perez, but for a reason different from that given by the district court.

### B. Relevant Conduct

The probation officer and the district court attributed the 615 kilograms to Mr. Perez under U.S.S.G. § 1B1.3(a)(2) and (a)(1)(B), which for jointly undertaken offenses like drug trafficking direct that relevant conduct include "all reasonably foreseeable acts and omissions of others." The probation officer opined that "it was reasonably foreseeable for Mr. Perez to be responsible for the 615 kilograms of marijuana" (PSR ¶ 33), and the district court agreed that the "standard that the Court has to apply that—is it reasonably foresee-

able that the Defendant should be responsible for this amount of marijuana" (Sen. Tr. at 12). Subsection (a)(1)(B), however, is designed to hold a defendant accountable for the conduct of others and is irrelevant to conduct in which the defendant personally participated; a defendant's own conduct is addressed under subsection (a)(1)(A) and does not require a reasonable foreseeability analysis. *See* U.S.S.G. § 1B1.3, comment. (n.2).

Because Mr. Perez admittedly helped to unload and store all 615 kilograms of marijuana, he is accountable under § 1B1.3(a)(1)(A) because he personally committed, and aided and abetted, the possession of the entire load. *See id.; United States v. Gutierrez–Herrera*, 293 F.3d 373, 376 (7th Cir.2002) (collecting cases) ("When a conspiracy defendant personally engages in illegal conduct, his actions are deemed 'relevant conduct' for sentencing purposes without resort to the 'reasonable foreseeability' test of U.S.S.G. § 1B1.3(a)(1)(B)."). The focus, then, should not have been on whether the other defendants' involvement with the 615 kilograms was "reasonably foreseeable" to Mr. Perez, but instead, only on whether Mr. Perez's own involvement with the 615 kilograms was "part of the same course of conduct or common scheme or plan" as the cocaine distributions he was convicted of. *See* U.S.S.G. § 1B1.3(a)(2).

"Same course of conduct" and "common scheme or plan" are two closely related but different concepts. *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir.2000). Offenses are part of the same course of conduct "if there is a sufficient relationship between them to support the conclusion that they are 'part of a single episode, spree, or ongoing series of offenses.'" *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir.1996) (quoting U.S.S.G. § 1B1.3, comment. (n.9)). In deciding whether this

test is met, courts look for "factors that point to a strong relationship between the uncharged conduct and the convicted offense," focusing on the degree of similarity and regularity and time interval between the two. *Id.* If one factor is weak or absent, a stronger showing of another is required. *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir.2003).

Mr. Perez argues that possession of the 615 kilograms was not part of the same course of conduct because it was dissimilar to his comparatively small cocaine sales, was a one-time deal rather than part of his regular drug dealing, and bore only a "weak" temporal connection to his other conduct. These arguments are unpersuasive. Despite the fact that, when addressing the degree of similarity, we have often looked to the identity and roles of the participants and the nature, structure, and location of the transactions, *see United States v. Cedano–Rojas*, 999 F.2d 1175, 1180 (7th Cir.1993), the guideline commentary states that what we consider is the "similarity of the *offenses,*" *see* § 1B1.3, comment (n.9) (emphasis added). In this case the crimes of conviction—distribution of a controlled substance—violated the identical statutory proscription as the questioned relevant conduct. The fact that the counts of conviction involved cocaine instead of marijuana is irrelevant. *See Acosta*, 85 F.3d at 281 (explaining that ongoing pattern of drug trafficking renders difference in drugs "of little or no importance").

Despite Mr. Perez's contention that the possession of 615 kilograms was not "regular" in any sense, *see United States v. Sykes*, 7 F.3d 1331, 1337 (7th Cir.1993) (defining "regularity"), the facts show that his distribution of marijuana was as regular as his distribution of cocaine. The informant testified that she purchased both cocaine and marijuana from Mr. Per-

ez for "a few months" before February 2002 (Tr. at 75), and the undercover buy in April 2002 included both cocaine and marijuana. Mr. Perez even admitted to selling marijuana in half-pound quantities four to five times in the three months before his arrest, which was during the same time that he was distributing cocaine. More importantly, officers found $4,500 in a bag marked "verde"—an apparent reference to marijuana. This relatively large amount of money suggests that Mr. Perez's marijuana dealing took place more often than he revealed. Even his admission standing alone describes "repeated acts," which took place "in accordance with some consistent ... rule or practice"—the definition of regularity. See id. Thus, sufficient evidence existed to conclude that Mr. Perez's marijuana distribution was as regular as his cocaine distribution, and the fact that Mr. Perez may not have regularly possessed such large quantities of marijuana is not fatal to this conclusion. See Acosta, 85 F.3d at 281.

Finally, there was a temporal connection between the conduct in question and the cocaine distributions. The cocaine sales for which Mr. Perez was convicted took place on April 4 and May 20, and the final undercover buy took place on May 31. In addition, his April 4 distribution involved both cocaine and marijuana. The 615 kilograms were seized on June 7—only eight days after the final undercover buy and less than two months after his conduct of conviction involving the sale of marijuana. These intervals are similar to those we have deemed sufficient to demonstrate a temporal connection in other cases. See United States v. Crockett, 82 F.3d 722, 730 (7th Cir.1996) (one month between offense and questioned conduct).

The discovery of cocaine and marijuana along with a scale in Mr. Perez's bedroom on the same day that officers discovered the 615 kilograms supports an inference that he was distributing these drugs at the same time that the 615 kilograms of marijuana were found in his basement. The facts here tend to show conduct not "easily ... separated into discrete, identifiable units." See Sykes, 7 F.3d at 1337 (internal quotation marks omitted). This characteristic supports the conclusion that Mr. Perez was dealing drugs continuously until his arrest. Accordingly, there is a strong showing of temporal proximity. See Acosta, 85 F.3d at 281 (ongoing pattern of drug trafficking suggests temporal proximity).

In fact, it is this strong temporal connection that distinguishes Mr. Perez's case from others involving similar facts but where we have not deemed a relationship between conduct sufficiently strong to find it relevant. See United States v. Johnson, 324 F.3d 875, 879–80 (7th Cir.2003) (span of more than one year suggests separate character of conduct where convicted offense involved individual sale of crack cocaine and unrelated conduct was large-scale, powder-cocaine conspiracy); United States v. Ruiz, 178 F.3d 877, 881–82 (7th Cir.1999) (two-year gap between like conduct suggests separate offenses); United States v. Mankiewicz, 122 F.3d 399, 403–05 (7th Cir.1997) (remanding for consideration whether five year gap between similar large-scale marijuana transactions sufficient); Sykes, 7 F.3d at 1337 (18–month interval between similar credit card fraud suggests separate offenses); see also Cedano–Rojas, 999 F.2d at 1181 ("[W]e must be cautious and exacting in permitting [two-year old] dealings to be included in the same course of conduct.").

Despite Mr. Perez's contention that "[t]he mere fact that the defendant has engaged in other drug transactions is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes," see United States v. Bacallao,

149 F.3d 717, 722 (7th Cir.1998) (citation omitted), his involvement with the 615 kilograms of marijuana bore the necessary relation in similarity, regularity, and temporality to be the same course of conduct as his convictions for distribution of cocaine, *see Sumner,* 325 F.3d at 889. Because we hold that the 615 kilograms of marijuana was properly included as part of the same course of conduct, we need not also decide whether it could have been included as part of a common scheme or plan. *See* U.S.S.G. § 1B1.3(a)(2); *Zehm,* 217 F.3d at 511 (relevant conduct may be proved under either analysis).

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED