**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2007
Decided March 12, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 06-1858

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 04 CR 50071 |
| ALLAN R. GUZMAN, *Defendant-Appellant.* | Philip G. Reinhard, *Judge.* |

**O R D E R**

Allan Guzman was indicted in 2004 after a year-long investigation into drug trafficking near Rockford, Illinois. He went to trial (*pro se* but with standby counsel) on the three counts in which he was named: conspiring with intent to distribute cocaine, possessing cocaine with intent to distribute, and possessing a firearm as a felon. *See* 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 922(g)(1).

At trial, the government presented evidence that Guzman was a mid-level distributor for a local drug kingpin, Martin Macias. Through phone conversations taped pursuant to court order and videotapes of meetings between Guzman (and his associates) and Macias (and his associates), the government presented evidence of

Guzman's drug purchases and payments.  The government asserts, and Guzman does not dispute, that the tapes and testimony evidence that Guzman purchased 13.5 ounces of cocaine in or around July 2004 and another 40 ounces between September 6 and November 6, 2004.  Government witnesses testified that Guzman was caught on tape receiving a bag and placing it in the trunk of the car in which he was riding; the bag later was found to contain one ounce of cocaine and an assault rifle.  The government also presented evidence that 693 grams of cocaine was seized from the home of one of Guzman's alleged co-conspirators, from whom he purchased cocaine.

The jury found Guzman guilty on all three counts.  The verdict form required the jury to determine the drug quantity for the conspiracy count, and it found that the amount was between 500 grams and five kilograms of cocaine.

The probation officer prepared a presentence investigation report (PSR) and a supplement to that report.  Citing only the government's representation that Guzman was fronted at least four ounces of cocaine a week for 15 months between September 2003 and December 2004, the probation officer concluded that Guzman was responsible for 3.412 kilograms of cocaine.  This yielded a base offense level of 28 on the drug offenses, *see* U.S.S.G. § 2D1.1(c)(6), and with the addition of two levels for possession of a firearm, *see id.* § 2D1.1(b)(1), resulted in a total offense level of 30.  The drug counts yielded a greater offense level than the gun count, so the guidelines range for all three convictions was premised on § 2D1.1.  *See* U.S.S.G. § 3D1.3(a).  With Guzman's criminal history category of IV, the resulting imprisonment range, as calculated by the probation officer, was 135 to 168 months.

Guzman (still *pro se*) did not object to the drug-quantity calculation or to the upward adjustment for possessing a gun, but he did argue that he was a minor participant in the conspiracy and thus deserved a two-level decrease in offense level under U.S.S.G. § 3B1.1.  At sentencing, however, the district court denied this request, reasoning that Guzman "was as equal as many of the persons in that conspiracy" and was not a minor participant "just because Macias was the supplier and more serious."  Also, without objection from Guzman, the court adopted the drug quantity recommended in the PSR, reasoning that Guzman "was a distributor in amounts in excess of two kilos over a little less than a six-month period."  The court refused Guzman's request for a sentence at the low end of the guidelines range because of Guzman's criminal history, and the court did not "like the fact that a gun is involved here, even though it wasn't used."  Still, "based on what [Guzman's] role was and based on the fact that there were others who were higher," the court denied the government's request for a sentence at the high end of the guidelines range and instead chose an overall term of 156 months.

Guzman raises two issues on appeal.  First, he argues that the district court improperly based the drug quantity calculations on unreliable information in the

PSR. Next, he claims that he played a minor role in the drug conspiracy and accordingly should have received a two-level reduction in offense level.

On appeal, Guzman first contends that the drug-quantity calculation in the PSR is not supported by reliable evidence. The quantity of drugs attributable to a defendant is a factual finding. *United States v. Marty*, 450 F.3d 687, 689-90 (7th Cir. 2006). In making this finding, a district court may rely upon facts set forth in the PSR if they bear sufficient indicia of reliability. *United States v. Sumner*, 325 F.3d 884, 890 (7th Cir. 2003). In reviewing the district court's drug-quantity finding, we review all evidence that was before the district court. *United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005).

Guzman did not challenge the drug-quantity calculation in the district court, so we cannot analyze his forfeited claim of error unless we find (1) an error, (2) that is plain, and (3) that affects Guzman's substantial rights; even then, we will not order a remand unless the error "seriously affects the fairness, integrity, or public reputation" of the proceedings or results in a "miscarriage of justice." *United States v. Ngo*, 406 F.3d 839, 844 (7th Cir. 2005) (citations and quotation marks omitted).

As the district judge initially noted, the government's evidence at trial placed Guzman in the drug conspiracy for about six months. The government did not produce evidence at trial that Guzman participated in the conspiracy for 15 months as reported in the PSR. Thus, drug quantity calculations based on a 15 month conspiracy participation was obviously incorrect. The district judge's reliance on that calculation in the PSR constituted plain error. Still, the error did not affect Guzman's substantial rights or result in a miscarriage of justice because the record supports a finding that he was involved with at least two kilograms of cocaine, the minimum necessary to trigger the base offense level of 28 applied to him. *See* U.S.S.G. § 2D1.1(c)(6).

The government's evidence at trial established that Guzman bought 40 ounces of cocaine in just two months—-September to November 2004. Extrapolating from that number for the entire six months that he was shown to have been in the conspiracy, *see United States v. Durham*, 211 F.3d 437, 444 (7th Cir. 2000), Guzman may be held accountable for 120 ounces, or 3.4 kilograms of cocaine, exactly the amount estimated by the probation officer and adopted by the court. And even if Guzman is right that the district court should have reduced the amount to account for his incarceration during much of December 2004, the drug quantity would not fall below the two-kilogram minimum and thus would not change his offense level, *see* U.S.S.G. § 2D1.1()(c)(6). Because Guzman cannot show that the district court's calculations affected his base offense level, any error is harmless. *See United States v. Frith*, 461 F.3d 914, 918 (7th Cir. 2006).

Guzman next argues that he was not a "primary player" in the drug conspiracy because "very little evidence" tied him to other members of the conspiracy. Thus, he says, he should have been deemed a minor participant and received a two-level reduction in his offense level. *See* U.S.S.G. § 3B1.2(b).

To receive a deduction as a minor participant, a defendant must demonstrate, by a preponderance of the evidence, that he was "substantially less culpable" than the average participant. *See* U.S.S.G. § 3B1.2 cmt. n.3(A); *United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005). The district court's application of § 3B1.2 is a factual finding that we review for clear error. *United States v. Mendoza*, 457 F.3d 726, 729 (7th Cir. 2006).

Here, the government provided evidence that Guzman was a middleman who received drugs, sold those drugs to customers, and delivered the sales proceeds back to his higher-ups. This evidence would suggest that Guzman was not "substantially less culpable" than others in the conspiracy. *See McGee,* 408 F.3d at 987 (upholding district court's finding that mid-level distributor defendant did not establish that he was substantially less culpable than average member of conspiracy). Accordingly, no mistake is apparent in the district court's conclusion that, though others occupied higher roles in the drug conspiracy, Guzman, as a distributor, was "essential" to its success.

AFFIRMED.